LOURIE, Circuit Judge,
dissenting from the denial of rehearing en banc.
I respectfully dissent from the court’s decision not to rehear this case en banc. At bottom, I consider that the decision of the panel was incorrect. But, we do not rehear appeals simply because a non-panel member disagrees with its result. See Amgen Inc. v. Hoechst Marion Roussel, Inc., 469 F.3d 1039, 1043 (Fed.Cir.2006) (Lourie, J., concurring) (“I do not believe that every error by a panel is enbancable. A panel is entitled to err without the full court descending upon it.”). Federal Rule of Appellate Procedure 35(a) provides that “[a]n en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court’s decisions; or (2) the proceeding involves a question of exceptional importance.” Our Internal Operating Procedures (“IOPs”) state that “[a]mong the reasons for en banc actions are: (1) necessity of securing or maintaining uniformity of decision; (2) involvement of a question of exceptional importance; (3) necessity of overruling a prior holding of this or a predecessor court expressed in an opinion having precedential status; or (4) the initiation, continuation, or resolution of a conflict with another circuit.” IOP 13(2).
However, consistent with those established criteria for taking a case en banc, I consider that the panel erred in its legal determinations, and that those errors will confuse the law relating to rebuttal of a prima facie case of obviousness of a chemical compound. Thus, an en banc hearing is warranted in this case in order to maintain uniformity of the court’s decisions and *1382 because it presents questions of exceptional importance.
The panel reversed the district court’s decision that claims relating to amlodipine besylate (the active ingredient in the hypertension drug Norvasc ®) were valid and nonobvious after a bench trial. Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348 (Fed.Cir.2007). In my view, several legal errors were made in this decision, and improper deference was given to fact-findings of the district court.
First, the panel failed to defer to fact-findings made by the district court that were not clearly erroneous regarding the unexpected properties of amlodipine besy-late. Evidence in the record, including trial testimony of experts and Pfizer scientists, internal research and development documents, and a scientific article, supported the district court’s finding that “the besylate salt clearly and unexpectedly exhibited a superior combination of properties when compared to what was suggested in the preferred preparation.” District Court Oral Op. Tr. at 23:13-15; see Pet. for Reh’g en banc at 5-6. The panel disregarded that express finding of fact, holding that “Pfizer has simply failed to prove that the results are unexpected.” Pfizer, 480 F.3d at 1371. Moreover, relying on the testimony of both parties’ experts, the district court found that there was no reasonable expectation of success with regard to using the besylate salt form of amlodipine. District Court Oral Op. Tr. at 23:1-9. However, rather than give deference to the district court’s fact-findings, the panel substituted its own finding that a reasonable expectation of success existed in the art. See Pfizer, 480 F.3d at 1361, 1364-65 (“The record also satisfies us that, contrary to the district court’s finding, a reasonable fact-finder could only conclude that the skilled artisan would have had a reasonable expectation of success with the besylate salt form of amlodipine.”). Much public discussion has occurred, and even judicial comments in opinions, that we should defer to district court judges concerning certain aspects of claim construction, which we have held is a matter of law. Be that as it may, it is undisputed that we must defer to fact-findings by a district court, unless they are clearly erroneous, and I do not believe that they were here.
In addition, the panel improperly placed greater importance on the therapeutic value of a claimed compound over the value of its physical properties. The panel concluded that the improvement of the invention, which related to drug formulation, viz., increased stability and decreased stickiness, was “insufficient” to meet the standards of patentability. Id. at 1368 (emphases added) (“[W]e hold that the optimization of the acid addition salt formulation for an active pharmaceutical ingredient would have been obvious where as here the acid addition salt formulation has no effect on the therapeutic effectiveness of the active ingredient and the prior art heavily suggests the particular anion used to form the salt.”). I read that conclusion as improperly requiring a compound to possess a specific type of improvement over the prior art — in this case, improved therapeutic properties — to be patentable, negating other important properties, a conclusion that is not compelled by our case law and not sound. Any useful and unexpected property should be eligible to overcome a prima facie obviousness determination. See In re Papesch, 50 C.C.P.A. 1084, 315 F.2d 381, 391 (1963) (“From the standpoint of patent law, a compound and all of its properties are inseparable; they are one and the same thing.... There is no basis in law for ignoring any property in making such a comparison.”).
*1383 Third, the panel also found that the invention was the result of routine experimentation, and therefore was not patentable. See Pfizer, 480 F.3d at 1367 (emphases added) (stating that the “type of experiments used by Pfizer’s scientists to verify the physicochemical characteristics of each salt are not equivalent to the trial and error procedures often employed to discover a new compound where the prior art gave no motivation or suggestion to make the new compound nor a reasonable expectation of success”). That conclusion conflicts with the statutory requirement that “[patentability shall not be negatived by the manner in which the invention was made.” 35 U.S.C. § 103(a). Moreover, the conclusion contradicts the district court’s supported findings that the results were unexpected, and that the experiments led to showing the totality of the properties of the invention, see Papesch, 50 C.C.P.A. 1084, 315 F.2d 381, which makes the compound nonobvious, not merely to the verification of results.
In addition, holding an inventor’s expectations of success against the objective unexpectedness of the properties of the compound unfairly suggests that an inventor should try only that which he doubts will work. See Pfizer, 480 F.3d at 1371 (“Dr. Wells’ testimony reflects the fact that he believed that amlodipine besylate would solve the "problems of amlodipine ma-léate.”). Inventors generally are optimistic about what they choose to experiment with, but that does not necessarily suggest obviousness.
These issues are of exceptional importance. Chemical and pharmaceutical compounds often can be found to be prima facie obvious, as they are based on prior work that could reasonably suggest them, see KSR Int’l Co. v. Teleflex Inc., — U.S. -, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007), but commercialization of such compounds may depend on their possession of unexpected properties. Such properties may be biological or physical. A failure to recognize all such properties that may be relevant to the value of such a compound may doom the compound to being poured down the drain rather than becoming an important therapeutic. The general public, innovative companies, and, ultimately, generic companies, depend upon faithful adherence to this principle. In addition, our cases hold that unexpected properties make for non-obviousness, see Papesch, 50 C.C.P.A. 1084, 315 F.2d 381, and this decision disdains such properties if they are not biological. That is a conflict with our precedent that needs resolution.
Not least, the question of deference to district courts, at least on fact issues, needs reaffirming. We must not shy away from reversing fact-findings that truly are clearly erroneous, as we do encounter them from time to time, but this case does not present them.
Thus, I would rehear this case, and I dissent from the court’s determination not to do so.